IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 1:12CR19

JAMES ROBERT HURST,
          Defendant.

**OPINION/REPORT AND RECOMMENDATION**

On the 22nd day of June, 2012, came the defendant, James Robert Hurst, in person and by his attorney, Katy J. Cimino, and also came the United States by its Assistant United States Attorney, Stephen Warner, for hearing on Defendant's "Motion to Suppress Physical Evidence" filed on May 10, 2012 [Docket Entry 16]. The United States filed its "Objection to Defendant's Motion to Suppress Evidence" on May 16, 2012 [Docket Entry 20].

**I. Procedural History**

Defendant was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on March 6, 2012. The indictment charges the defendant with Manufacturing 100 or More Marijuana Plants (Count One) and Possession with Intent to Distribute Marijuana (Count Two).

Defendant appeared before the Court for an arraignment on April 23, 2012, at which time he pled not guilty to both counts.

**II. Contentions of the Parties**

Defendant contends:

1. Probable cause did not exist to support the search.

2. The good faith exception to the exclusionary rule should not apply as the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

The United States contends:

1. The warrant was based on probable cause.

2. The officers executed the warrant in good faith.

### III. Statement of Facts.

The undersigned heard the sworn testimony of Doddridge County Magistrate Jamie Lou Moran, and Doddridge County Sheriff's Deputy Tammy Satterfield and admitted into evidence Government Exhibits 1, 2, 3 and 4 without objection. Barbara Eakle appeared pursuant subpoena and was duly sworn as a witness in the matter. Upon being advised of her rights, Eakle asserted her right to remain silent under the Fifth Amendment. She was thereupon excused.

The undersigned finds the testimony of magistrate Moran and Deputy Satterfield to be entirely credible. Each corroborated the testimony of the other. Each testified there was a search warrant issued in for Defendant's residence based on the affidavit presented by Deputy Satterfield. The undersigned finds the following facts based on the exhibits in evidence, the memoranda of counsel, and the credible testimony of magistrate Moran and Deputy Satterfield.

Around the beginning of August 2011, Child Protective Services ("CPS") began an investigation of a woman named Barbara Eakle, due to suspected drug use going on in her home while young children lived there. The CPS contacted the Doddridge County Sheriff's Department because they were usually accompanied by law enforcement when drugs or guns were involved in a CPS case. Deputy Satterfield was assigned to accompany the CPS employee to Ms. Eakle's home.

When they arrived, Ms. Eakle and an infant were in the residence. Deputy Satterfield advised Ms. Eakle she had best turn over any drugs or drug paraphernalia. Ms. Eakle retrieved and turned over a green, leafy substance in a baggie located under or adjacent to the mattress on which Ms. Eakle and the infant slept. There was also drug paraphernalia, including a pipe and a silver grinder.

The CPS employee and local deputy sheriff questioned Ms. Eakle about where she obtained the illegal substances, specifically marijuana. Ms. Eakle informed them that her boyfriend, Mr. Meade, bought the marijuana from her relative Mr. James Hurst, the defendant. He was also known as "Jimbo." Mr. Meade was not present to confirm this story to the CPS employee and the deputy.

Based on Ms. Eakle's statements during the investigation of her residence, and the fact that they did find what the officer believed and was later determined to be marijuana and paraphernalia for grinding and smoking marijuana, the deputy discussed what had occurred and been found with her supervisor, the Sheriff of Doddridge County, WV. The Sheriff advised Deputy Satterfield that he recalled Defendant having a prior criminal record. Deputy Satterfield ran a records check on Defendant and discovered that he had two prior felony convictions, one of which was for manufacturing marijuana. It was approximately ten years ago. No other investigation of any kind was conducted. Deputy Satterfield applied for a search warrant from Doddridge County Magistrate Jamie Lou Moran. Magistrate Moran recalled that Defendant had appeared before her at some point in the past for a drug related matter. Magistrate Moran granted the search warrant based on the probable cause statement of facts in the included affidavit. The search warrant was issued for Defendant's residence. Police executed the search warrant at Defendant's residence on August 15, 2011, four days after the investigation of the Eakle residence.

As of the date of the search, Defendant was the lawful resident of the home located in New

Milton, in Doddridge County, West Virginia.

The affidavit in support of the search warrant states:

On August 12, 2011, at approximately 2130 hours the undersigned officer and Child Protective Service Worker Jondrea Nicholson went to a residence on a child welfare check. The allegations in the CPS Referral were that there was marijuana use in the residence in front of underage kids. Upon our arrival at the residence, the undersigned officer made contact with the individual that was named in the referral. The undersigned officer advised this individual that if there was any drugs/paraphernalia or any illegal substance in the residence, it needed to be turned over to the undersigned officer at this time. The individual went to the living room area and got a bag of a green leafy substance, verbalized by the individual to be marijuana. Also given to the undersigned officer was a glass pipe used for smoking marijuana and a silver in color grinder used to grind marijuana. The undersigned officer asked the individual where the marijuana was obtained. It was disclosed to the undersigned officer and CPS Nicholson that another person living in the house had bought it. The individual disclosed to the undersigned officer that they buy the marijuana from Jimbo Hurst. It was also disclosed to the undersigned officer that they also buy leafs [sic] off of Jimbo's plants. The undersigned officer then asked where Mr. Hurst lives. It was disclosed to the undersigned officer that Mr. Hurst lives on Route 18 South past the horse farm on the left.

### IV. Discussion

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980)( quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972)). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

The Fourth Amendment to the Constitution of the United States provides: "The right of the

4

people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

## Leon Good Faith Exception

The Government argues that, even if the information in the affidavit were found to be insufficient for a finding of probable cause to issue a search warrant, the evidence seized in the search should not be suppressed pursuant to the "good faith exception" stated in U.S. v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 677 (1984). The undersigned will look first to the "good faith" exception and, if this exception is inapplicable, then to a determination of whether or not there was probable cause to support the warrant. This approach was approved by the United States Supreme Court in Leon,[1] and by the Fourth Circuit in United States v. Bynum, 293 F.3d 192 (4th Cir. 2002) ("Assuming without deciding that no probable cause supported the warrant, we will proceed 'immediately to a consideration of the officers' good faith.'") (citing Leon); United States v. Legg, 18 F.3d 240 (4th Cir. 1994)("We turn first to consideration of the good faith exception.")

---

[1]If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue. Even if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation. In other circumstances, those courts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith. We have no reason to believe that our Fourth Amendment jurisprudence would suffer by allowing reviewing courts to exercise an informed discretion in making this choice. Leon at 925, 104 S. Ct. at 3421-3422.

Defendant argues that Leon does not apply because the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unseasonable. Defendant argues that this case presents the perfect example of a "bare bones" affidavit in which objective facts supporting a probable cause finding are completely lacking. In addition, the case involved minimal police investigation to corroborate unsubstantiated claims made by an individual under CPS investigation for having drugs in her home. Defendant correctly states that in the probable cause context, the credibility of informants in drug contexts "may often be suspect." (Quoting United States v. DeQuasie, 373 F.3d 509 (4th Cir. 2004). Defendant argues that the one-paragraph affidavit was "incredibly terse" and that much of the information had absolutely no bearing whatsoever on a probable cause finding. Finally, "the police affidavit used here hardly would 'create disagreement among thoughtful and competent judges as to the existence of probable cause' as was the case in Leon." Defendant cites the affidavit rejected by the Fourth Circuit in United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996), arguing that the affidavit in this case is even worse than that in Wilhelm.

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In Leon, the Supreme Court explained the reason for rule:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

Leon at 915, 104 S. Ct. at 3417. Further:

6

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

Id. at 918, 104 S. Ct. 3 at 3419. The Supreme Court concluded:

> [T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.

Id. at 922, 104 S. Ct. at 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence, depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. at 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.) In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's

authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

Defendant has presented no evidence, and does not argue that Magistrate Moran was misled by false information knowingly or recklessly provided by Deputy Satterfield. Further, the undersigned finds that Deputy Satterfield did not knowingly or with a reckless disregard for the truth misrepresent the facts to mislead Magistrate Moran. The first situation therefore does not apply.

The undersigned also finds the warrant was not so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers could not reasonably presume it to be valid. Therefore the fourth exception does not apply.

Nor does the undersigned find that Magistrate Moran acted as a "rubber stamp" in issuing the search warrant. In Leon, the Court stated that when a magistrate abandons his neutral role "in the manner condemned in *Lo-Ji Sales, Inc. v. New York*," then the good faith exception should not apply. Leon, 468 U.S. at 923, 104 S.Ct. 3405. Defendant has not presented any evidence that the magistrate "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)." In Lo-Ji Sales, an investigator sought a warrant to search an adult

8

bookstore and presented a Town Justice with two allegedly obscene films along with an affidavit indicating that "similar" films were present in the bookstore. 442 U.S. at 321, 99 S.Ct. 2319. After viewing the two films, the Town Justice issued a warrant authorizing a search of the bookstore for items determined to be possessed in violation of law. Id. at 321-22, 99 S.Ct. 2319. The warrant did not list those items; instead, the Town Justice accompanied law enforcement officers on a search of the bookstore, examined the materials therein to assess their obscenity, then authorized the seizure the items deemed obscene. Id. at 326-27, 99 S.Ct. 2319. The Supreme Court stated that the Town Justice "was not acting as a judicial officer but as an adjunct law enforcement officer." Id. at 327, 99S.Ct. 2319. The Court disapproved of the Town Justice's reliance on the "conclusory" allegations that "similar" items were present at the store and criticized the issuance of an open-ended warrant. Regarding the actions of the Town Justice in Lo-Ji Sales, the Supreme Court stated:

> He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law enforcement officer. When he ordered an item seized because he believed it was obscene, he instructed the police officers to seize all "similar" items as well, leaving determination of what was "similar" to the officer's discretion. Indeed, he yielded to the State Police even the completion of the general provision of the warrant. Though it would not have validated the warrant in any event, the Town Justice admitted at the hearing to suppress evidence that he could not verify that the inventory prepared by the police and presented to him late that evening accurately reflected what he had ordered seized.

In U.S. v. Doyle, 650 F.3d 460 (4th Cir. 2011), the Fourth Circuit stated:

> Doyle does not contend that the state magistrate issued an open-ended warrant or executed the search alongside law enforcement officers as did the Town Justice in *Lo-Ji Sales*. And while this Court has held that a magistrate abandons his judicial role when issuing a warrant based on a "bare bones affidavit," *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996), if a magistrate issues a warrant on the basis of nonconclusory statements that nonetheless fail to establish probable cause, the reasonableness of the officer's execution of the warrant is better analyzed under the

third circumstance discussed in <u>Leon</u>, which we address below. <u>See</u> <u>Andrews</u>, 577 F.3d at 240 (stating that a "rubber stamp" challenge to judicial neutrality "[e]ssentially . . . recasts Andrews' argument that no officer could reasonably rely on the warrant because there was an insufficient basis for a probable cause finding"); <u>see also</u> <u>United States v. Sager</u>, 743 F.2d 1261 (8th Cir. 1984)(rejecting rubber stamp challenge to neutrality as "only another way of phrasing the argument that no one who relied upon the affidavit could have been objectively reasonable"). Accordingly, we are reluctant to conclude that the state magistrate so abandoned his judicial role as to require a departure from the <u>Leon</u> good faith exception.

Finding similarly that Defendant here has presented no evidence showing Magistrate Moran acted in any way similarly to the judicial officer in <u>Lo-Ji</u>, the undersigned does not conclude that the magistrate "so abandoned his judicial role as to require a departure from the <u>Leon</u> good faith exception." The second exception to <u>Leon</u>, therefore, does not apply in the instant case.

Defendant particularly argues that the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unseasonable. Defendant argues that this case presents the perfect example of a "bare bones" affidavit in which objective facts supporting a probable cause finding are completely lacking. In addition, he argues that the case involved minimal police investigation to corroborate unsubstantiated claims made by the police informant.

> A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others - - usually a confidential informant - - without corroboration or independent investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause.

<u>United States v. Wilhelm</u>, 80 F.3d 116 (4th Cir. 1996). Defendant argues "[t]he affidavit in support of the search warrant here was even worse than the affidavit rejected by the Fourth Circuit Court of Appeals in <u>United States v. Wilhelm</u> . . ."

The Fourth Amendment states that "no <u>Warrants</u> shall issue, but upon probable cause, supported by Oath or affirmation . . . ." (Emphasis added). The question before the court is not,

10

however, whether the warrant was supported by probable cause, but whether it was so deficient that relying on it was unreasonable. When considering the application of the good faith exception, courts "should examine the totality of the information presented to the magistrate in deciding whether an officer's reliance on the warrant could have been reasonable." United States v. Legg, 18 F.3d 240 (4th Cir. 1994).

Defendant notes in particular that the police did not corroborate Ms. Eakle's statements with anyone, including her boyfriend, who allegedly bought the pot; they did not do any surveillance of Defendant's house; they did not perform a traffic stop of Defendant; they did not note voluminous traffic at Defendant's residence; they had not used Eakle as in informant before, therefore having no indication of her credibility or reliability; Ms. Eakle did not mention buying drugs from Defendant herself, having been in Defendant's home, or seeing drugs in Defendant's home. Finally, neither the magistrate nor Deputy Satterfield were aware Eakle tested positive for marijuana later than evening.

Later that night, Deputy Satterfield advised the Sheriff of what had transpired. The Sheriff advised her that Defendant had a prior criminal record. Deputy Satterfield checked the report which showed Defendant had two prior convictions– one for armed robbery in 1997, and one for manufacturing marijuana in 2002.

Deputy Satterfield applied for the search warrant the next day. Magistrate Moran came into the office to review. Deputy Satterfield testified she made magistrate Moran aware of the prior conviction, but the magistrate did not recall that. The magistrate issues the search warrant.

Ms. Eakle let the officers in the house. Deputy Satterfield did not recall any talk about Eakle losing her children because of the drugs or dirty house conditions. Eakle was "ok" at first, until she became upset when bringing the marijuana from the mattress where she and the baby were sleeping.

In this case, Ms. Eakle, the subject who provided the information to Deputy Satterfield, was not a confidential informant. The officer knew and stated in the affidavit the informant's name and address, and originally went to her home with CPS to investigate drug usage in front of children. Had she lied the officer knew her identity and address. Further, although Defendant implies that "claims made by an individual under CPS investigation for having drugs in her home" are not credible, as "the credibility of informants in drug contexts 'may often be suspect," in the case cited, U.S. v. DeQuasie, the Fourth Circuit stated:

> [T]here is no "simple rule" that covers all information supplied by informants. However, we have noted that because an informant who meets face-to-face with an officer provides the officer with an opportunity to assess his credibility and demeanor and also exposes himself to accountability for making a false statement, "courts have had no difficulty distinguishing between cases involving face-to-face encounters with informants and cases involving anonymous tipsters." *United States v. Christmas*, 222 F.3d 141 (4th Cir. 2000) . . . . Additionally, we have recognized than an informant's personal interest can create "a strong motive to supply accurate information." *United States v. Miller*, 925 F.2d 695 (4th Cir. 1991).

Further, the fact that an informant is admitting to a crime or providing information in hopes of leniency for past crimes is "indicia of reliability" of the information provided. See, e.g., United States v. Harris, 403 U.S. 573 (1971). In this case, Ms. Eakle handed over the substance, and told the officer it was marijuana. She could have stated it was not hers and she had never seen it before. The undersigned finds that had Ms. Eakle given false information, she would not only have been in more trouble with the police, but she could have reasonably been motivated to provide accurate information due to the involvement of CPS.

Plaintiff also questions the fact that the officers concluded evidence of drugs would be found at Defendant's residence, when Eakle never stated where the marijuana was purchased, where it was manufactured, and had never been to Defendant's residence. Further, the police performed no

12

surveillance or monitoring of the residence for signs of drug manufacturing or dealing. Whether or not there is a sufficient nexus between certain criminal conduct and the residence is determined on a case-by-case basis. Fourth Circuit cases indicate that a sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant "contains no factual assertions directly linking the items sought to be defendant's residence." United States v. Servance, 394 F.3d 222 (4th Cir. 2005). See also U.S. v. Anderson, 851 F.2d 727 (4th Cir. 1988) (agreeing with other circuits "that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.) In U.S. v. Grossman, 400 F.3d 212, the Fourth Circuit found the same logic controlled, in that under the circumstances, it was reasonable to suspect that a drug dealer stores drugs in a home to which he owns a key. On the other hand, in U.S. v. Lalor, 996 F.2d 1578 (4th Cir. 1993), the Fourth Circuit found the affidavit in that case devoid of any basis from which the magistrate could infer that evidence of drug activity would be found at a residence. The Fourth Circuit proceeded to find, however, that the good faith exception applied, stating:

> As stated above, the warrant application is deficient because it fails to establish a nexus between the drug activity and the location that was searched. Nevertheless, the warrant is not so lacking in probable cause that the officers' reliance upon it was objectively unreasonable.

As already found, the undersigned finds the search, even if not supported by probable cause, is saved by the good faith exception stated in Leon. For all the above reasons, the undersigned finds Deputy Satterfield's reliance on the search warrant issued by the undersigned Magistrate Judge was objectively reasonable. The good faith exception, therefore, renders the evidence seized in the search admissible, even if it were determined there was not probable cause to issue the search

13

warrant.

Inasmuch as an order denying defendant's motion to suppress may be tantamount to a dispositive motion, it is the **RECOMMENDATION** of the undersigned Magistrate Judge that defendant's Motion to Suppress Physical Evidence (Docket Entry 16) be **DENIED.**

Any party may, within fourteen (14) days after being served with a copy of this Recommendation for Disposition, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation for Disposition to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation for Disposition set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 22 day of June, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE